FILED

AUG 29 2017

CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | CR. NO. 1:17cr379-WKW |
| ) | [21 U.S.C. § 841(a)(1); |
| RYAN ANTHONY SIKORA,   ) | 21 U.S.C. § 846; |
| JOHN JOSEPH BUSH, II, and  ) | 21 U.S.C. § 331(a); |
| ARIEL ANNA MURPHY  ) | 21 U.S.C. § 352(a)(1); |
| ) | 21 U.S.C. § 352(i)(1-3); |
| ) | 21 U.S.C. § 353(b)(1); |
| ) | 21 U.S.C. § 333(a)(2); |
| ) | 18 U.S.C. § 371] |
| ) | |
| ) | INDICTMENT |

The Grand Jury charges:

COUNT 1
(Conspiracy to Distribute Anabolic Steroids)

Beginning from an unknown date in 2015, and continuing to on or about March 9, 2017, in Houston County, within the Middle District of Alabama, and elsewhere, the defendants,

RYAN ANTHONY SIKORA,
JOHN JOSEPH BUSH, II, and
ARIEL ANNA MURPHY,

and other individuals, known and unknown to the Grand Jury, did knowingly and intentionally conspire, combine, and agree with each other and with other individuals, known and unknown to the Grand Jury, to manufacture, distribute, dispense, and possess with the intent to distribute, a mixture or substance containing a detectable amount of anabolic steroids in various forms, including but not limited to, trenbolone enanthate, testosterone enanthate, and methandrostenolone, all of which are Schedule III controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(E)(i). All in violation of Title 21, United States Code, Section 846.

1

## COUNT 2
(Conspiracy to Introduce/Deliver Misbranded Drugs)

At all times material to this Indictment:

1.   Pursuant to the Federal Food, Drug, and Cosmetic Act (FDCA):

(a)   The term "drug" includes: (1) articles that are intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease in man, and (2) articles (other than food) that are intended to affect the structure or function of the body of man (*see* 21 U.S.C. § 321(g)(1)(B) and (C));

(b)   The term "prescription drug" includes: (1) a drug that, because of its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use, is not safe for use except under the supervision of a practitioner licensed by law to administer such drug, and can only lawfully be dispensed upon a written or oral prescription of a practitioner licensed by law to administer such drug; and (2) a drug, which as a condition of the United States Food and Drug Administration's (FDA) approval of the drug, was required to be administered under the supervision of a practitioner licensed by law to administer such drug (*see* 21 U.S.C. § 353(b)(1)(A) & (B));

(c)   A drug is deemed to be "misbranded" if, among other things,

(i)   its labeling is false or misleading in any particular (*see* 21 U.S.C. § 352(a)(1));

(ii)   it is a drug and its container is so made, formed, or filled as to be misleading (*see* 21 U.S.C. § 352(i)(1));

(iii)   it is an imitation of another drug (*see* 21 U.S.C. § 352(i)(2));

(iv)   it is offered for sale under the name of another drug (*see* 21 U.S.C. § 352(i)(3)); and

2

(v) it is a prescription drug dispensed without a valid prescription of a licensed practitioner (*see* 21 U.S.C. § 353(b)(1));

(d) The term "labeling" means all labels and other written, printed, or graphic matter, (1) upon any article or any of its containers or wrappers, or (2) accompanying such article (*see* 21 U.S.C. § 321(m)).

2. RYAN ANTHONY SIKORA, JOHN JOSEPH BUSH, II, and ARIEL ANNA MURPHY, did not possess any medical license, any pharmaceutical license, or any other license that gave them the right to manufacture, distribute, dispense, and deliver prescription drugs.

3. Viagra, which contained the active pharmaceutical ingredient (API) sildenafil citrate, was approved by the FDA and regulated as a prescription drug product for the primary use of treating erectile dysfunction. Pfizer, Inc. was a pharmaceutical company that had the exclusive right to manufacture Viagra for distribution within the United States.

4. Cialis, which contained the API tadalafil, was approved by the FDA and regulated as a prescription drug product for the primary use of treating erectile dysfunction. Eli Lilly and Company was a pharmaceutical company that had the exclusive right to manufacture Cialis for distribution within the United States.

5. Accutane, which contained the API isotretinoin, was approved by the FDA and regulated as a prescription drug product for the primary use of treating severe nodular acne. Roche Pharmaceuticals was a pharmaceutical company that had the exclusive right to manufacture Accutane for distribution within the United States.

6. Clomid, which contained the API clomiphene, was approved by the FDA and regulated as a prescription drug product for the primary use of treating infertility in women. Sanofi

S.A. was a pharmaceutical company that had the exclusive right to manufacture Clomid for distribution within the United States.

7.　Beginning from an unknown date in 2015, and continuing to on or about March 9, 2017, in Houston County, within the Middle District of Alabama, and elsewhere, the defendants,

> RYAN ANTHONY SIKORA,
> JOHN JOSEPH BUSH, II, and
> ARIEL ANNA MURPHY,

and other individuals, known and unknown to the Grand Jury, did knowingly and intentionally conspire, combine, and agree with each other and with other individuals, known and unknown to the Grand Jury, to commit an offense against the United States, to-wit: with the intent to defraud and mislead, to introduce and deliver for introduction into interstate commerce drugs that were misbranded within the meaning of Title 21, United States Code, Sections 352(a), 352(i)(1-3), and 353(b)(1), in violation of Title 21, United States Code, Sections 331(a) and 333(a)(2).

## OBJECTIVES OF THE CONSPIRACY

8.　It was the purpose and object of the conspiracy for RYAN ANTHONY SIKORA, JOHN JOSEPH BUSH, II, ARIEL ANNA MURPHY, and other individuals, known and unknown to the Grand Jury, to import, manufacture, and market drugs that were misbranded as Viagra, Cialis, Accutane, and Clomid, in an effort to sell and introduce the same into interstate commerce.

## MANNER AND MEANS

9.　To accomplish the objectives of the conspiracy, RYAN ANTHONY SIKORA, JOHN JOSEPH BUSH, II, ARIEL ANNA MURPHY, and other individuals, known and unknown to the Grand Jury, used the following manner and means, among others:

4

10. Purchased various APIs in raw powder form from a source located in the Hong Kong Special Administrative Region of the People's Republic of China ("Hong Kong") to produce misbranded drugs.

11. Purchased and used a mobile home at 890 Falling Water Road, Chipley, Florida 32428 to serve as the primary production facility to manufacture, label, and store the misbranded drugs.

12. Purchased and used two large-scale pill presses to assist in manufacturing the misbranded drugs.

13. Manufactured the API powders into a final pill form of misbranded drugs, e.g., Viagra, Cialis, Accutane, and Clomid.

14. Falsely labeled containers as Viagra, Cialis, Accutane, and Clomid, and placed the respective misbranded drugs into those containers.

15. Marketed the misbranded drugs online through multiple mediums and falsely held them out to be Viagra, Cialis, Accutane, and Clomid.

16. Distributed and delivered the misbranded drugs under the name and labeling of Viagra, Cialis, Accutane, and Clomid.

## OVERT ACTS

17. In furtherance of the conspiracy and to accomplish its objectives, RYAN ANTHONY SIKORA, JOHN JOSEPHY BUSH, II, and ARIEL ANNA MURPHY committed the following overt acts, among others:

18. Beginning from an unknown date in 2015, and continuing to on or about March 9, 2017, RYAN ANTHONY SIKORA maintained the primary production facility where large amounts of misbranded drugs were produced, labeled, and stored.

19. Beginning from an unknown date in 2015, and continuing to on or about March 9, 2017, RYAN ANTHONY SIKORA sent MoneyGram orders to Hong Kong to purchase API powders necessary to produce the misbranded drugs.

20. Beginning from an unknown date in 2015, and continuing to on or about March 9, 2017, RYAN ANTHONY SIKORA regularly shipped to, and picked up packages from Intown Suites, 2880 Ross Clark Cir., Dothan, AL, which contained the API powders necessary to manufacture the misbranded drugs.

21. Beginning from an unknown date in 2015, and continuing to on or about March 9, 2017, RYAN ANTHONY SIKORA, used, or assisted another in using, one of the pill presses at the primary production facility to manufacture misbranded drugs, including but not limited to: on or about January 26, 2017, to produce misbranded Accutane and Clomid; on or about January 31, 2017, to produce misbranded Accutane; and on or about February 15, 2017, to produce misbranded Accutane.

22. Beginning from an unknown date in 2015, and continuing to on or about March 9, 2017, JOHN JOSEPH BUSH, II, sent MoneyGram orders to Hong Kong to purchase API powders necessary to produce the misbranded drugs.

23. Beginning from an unknown date in 2015, and continuing to on or about March 9, 2017, JOHN JOSEPH BUSH, II, used, or assisted another in using, one of the pill presses at the primary production facility to manufacture misbranded drugs, including but not limited to: on or about January 24, 2017, to produce misbranded Cialis; on or about January 26, 2017, to produce misbranded Accutane and Clomid; on or about January 31, 2017, to produce misbranded Accutane; on or about February 1, 2017, to produce misbranded Accutane; on or about February 15, 2017, to produce misbranded Accutane.

24. Beginning from an unknown date in 2015, and continuing to on or about March 9, 2017, JOHN JOSEPH BUSH, II, sorted, counted, labeled and packaged, or assisted another in doing the same, to prepare misbranded drugs for shipping, including but not limited to: on or about January 25, 2017, to prepare misbranded Cialis; and on or about February 2, 2017, to prepare misbranded Accutane.

25. Beginning from an unknown date in 2015, and continuing to on or about March 9, 2017, ARIEL ANNA MURPHY sent MoneyGram orders to Hong Kong to purchase API powders necessary to produce the misbranded drugs.

26. Beginning from an unknown date in 2015, and continuing to on or about March 9, 2017, ARIEL ANNA MURPHY sorted, counted, labeled and packaged, or assisted another in doing the same, to prepare misbranded drugs for shipping, including but not limited to: on or about November 17, 2015, to prepare misbranded Accutane; and on or about October 31, 2016, to prepare misbranded Cialis.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATION-1

A. The allegations contained in Count 1 of this indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 21, United States Code, Section 853.

B. Upon conviction of the offenses in violation of Title 21, United States Code, Sections 841(a)(1) and 846, set forth in Count 1 of this indictment, the defendants,

>	RYAN ANTHONY SIKORA,
>	JOHN JOSEPH BUSH, II, and
>	ARIEL ANNA MURPHY,

shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853, any and all property constituting or derived from proceeds said defendants obtained directly or indirectly as a result of the said violations and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the offenses in violation of Title 21, United States Code, Sections 841(a)(1) and 846. The property includes, but is not limited to, $8,786.00 in U.S. currency seized on or about March 9, 2017, from the address of 756 Glenwood Ave., Chipley, Florida 32428; and all of the electronic devices seized on or about March 9, 2017, from the addresses of 756 Glenwood Ave., Chipley, Florida 32428 and 890 Falling Water Road, Chipley, Florida 32428 (including, but not limited to, a Dell OptiPlex computer, a Toshiba laptop computer, an Asus laptop computer, a Lenovo laptop computer, a black tower computer, a Western hard drive, three thumb drives, a Straight Talk mobile hotspot, two Samsung cellular phones, two Apple cellular phones/iPhones, two pill presses, and all other manufacturing equipment and materials that were used to make anabolic steroids and misbranded drugs).

    C.    If any of the property described in this forfeiture allegation, as a result of any act or omission of the defendants:

    (1)    cannot be located upon the exercise of due diligence;

    (2)    has been transferred or sold to, or deposited with, a third party;

    (3)    has been placed beyond the jurisdiction of the court;

    (4)    has been substantially diminished in value; or

    (5)    has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL:

*James E. Grant* (signature)
Foreperson

All pursuant to Title 21, United States Code, Section 853.

A. CLARK MORRIS
ACTING UNITED STATES ATTORNEY

*/s/ Bradley Bodiford*
Bradley Bodiford
Assistant United States Attorney

*/s/ Kevin P. Davidson*
Kevin P. Davidson
Assistant United States Attorney